IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| IN RE MENTOR CORP. OBTAPE | * | MDL Docket No. 2004 |
| | | 4:08-MD-2004 (CDL) |
| TRANSOBTURATOR SLING PRODUCTS | * | |
| | | Case Nos. |
| LIABILITY LITIGATION | * | 4:12-cv-307 (Rogers) |
| | | 4:12-cv-308 (Mosier) |
| | * | 4:12-cv-319 (Kearse) |
| | | 4:12-cv-323 (Shirey) |
| | * | 4:13-cv-10 (Weikel) |
| | | 4:13-cv-48 (Shaffer) |
| | * | |

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiffs Deborah Rogers, Verna Mosier, Victoria Kearse, Samantha Shirey, Michelle Weikel, and Betty Lou Shaffer were implanted with ObTape and assert that they suffered injuries caused by ObTape. Each Plaintiff brought a product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Plaintiffs also assert that Mentor did not adequately warn their physicians about the risks associated with ObTape. Plaintiffs brought their claims under negligence and strict liability theories. Mentor contends that their claims are all time-barred. For the reasons set forth below, the Court agrees, and Mentor's summary judgment motions are granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).   A fact is *material* if it is relevant or necessary to the outcome of the suit.   *Id.* at 248.   A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.   *Id.*

FACTUAL BACKGROUND

## I.   Plaintiff Deborah Rogers (ECF No. 42 in 4:12-cv-307)

Deborah Rogers visited Dr. Jonathan Kalish in 2005 for treatment of stress urinary incontinence.   Dr. Kalish implanted Rogers with ObTape on September 26, 2005.   In July 2006, Rogers went to Dr. Newt Harrison because she had a foreign body hanging from her vaginal area.   Dr. Harrison reviewed Rogers's medical records and discovered that the foreign body must be the ObTape that had been implanted in 2005.   Dr. Harrison called Dr. Kevin Bond, a urologist, to remove the exposed ObTape.   As Dr. Bond excised the eroded portion of Rogers's ObTape, the entire sling

"slid right out." Bond Dep. 19:17-20:10, ECF No. 42-8 in 4:12-cv-307. Though Dr. Bond did not recall exactly what he told Rogers, he is sure that he discussed his operative findings with Rogers or a family member. *Id.* at 34:12-16. Rogers acknowledges that her doctors probably communicated to her regarding the reason for the excision surgery and that her medical records reflect that her ObTape was removed in July 2006. Rogers Dep. 58:12-60:11, ECF No. 44-3.

Rogers is a Mississippi resident whose ObTape-related treatment took place in Mississippi. On October 11, 2012, Rogers served Mentor with a copy of her Complaint captioned in Hennepin County District Court of the State of Minnesota. Rogers brought claims for strict liability and negligence.

## II. Plaintiff Verna Mosier (ECF No. 45 in 4:12-cv-308)

Verna Mosier visited Dr. Helen Kinsey for treatment of stress urinary incontinence, and Dr. Kinsey implanted Mosier with ObTape on June 29, 2004. In February 2005, Mosier was diagnosed with a left groin abscess. Dr. Kinsey told Mosier that she suspected a connection between the abscess and Mosier's ObTape, and she referred Mosier to Dr. Jyot Saini for further evaluation. Dr. Saini diagnosed Mosier with a vaginal erosion of the ObTape and told Mosier that there was a high likelihood that the ObTape was related to her abscess. Dr. Saini removed Mosier's ObTape in March 2005.

Mosier was an Indiana resident whose ObTape-related treatment took place in Indiana. On September 26, 2012, Mosier filed a Complaint in Hennepin County District Court of the State of Minnesota. Mosier died in 2014, and her husband Abraham Mosier is pursuing Mosier's claims for strict liability and negligence on behalf of Mosier's estate. He also asserts a claim for loss of consortium.

### III. Plaintiff Victoria Kearse (ECF No. 44 in 4:12-cv-319)

Dr. Christopher Pieczonka implanted Victoria Kearse with ObTape on November 5, 2004. In January 2005, Kearse presented to Dr. Pieczonka complaining of vaginal discharge. Dr. Pieczonka observed that a portion of Kearse's ObTape was exposed through the incision site, and he attempted to close the incision. Later that month, Kearse returned to Dr. Pieczonka complaining of vaginal discharge. Again, Dr. Pieczonka saw exposed ObTape, and he surgically removed a portion of it. In September 2005, Dr. Pieczonka diagnosed an erosion of Kearse's ObTape and performed another excision procedure. At the time, Kearse knew that Dr. Pieczonka had to remove portions of her ObTape, and she believed that her body was rejecting the mesh.

Kearse is a New York resident whose ObTape-related treatment took place in New York. On October 19, 2012, Kearse served Mentor with a copy of her Complaint captioned in Hennepin

County District Court of the State of Minnesota.  Kearse brought claims for strict liability and negligence.

## IV.  Plaintiff Samantha Shirey (ECF No. 49 in 4:12-cv-323)

Dr. Brian Chadwick diagnosed Samantha Shirey with stress urinary incontinence and recommended that she undergo an ObTape implant surgery.  Dr. Chadwick implanted Shirey with ObTape on December 15, 2004.  In 2006, Shirey began experiencing complications, including vaginal discharge and thigh pain, and Shirey's husband encouraged her to see a doctor after he felt something protruding from her vagina during sex.

On June 24, 2006, Shirey went to the hospital and was told that the object in her vagina was an exposed piece of mesh. Shirey was ultimately referred to Dr. Connor Smith.  Dr. Smith examined Shirey and told her that he needed to remove the exposed ObTape.  He also told her that the ObTape was causing her discharge and thigh pain and that he thought removing the exposed portion of the mesh would alleviate these symptoms. Shirey Dep. 73:7-74:3.  On July 11, 2006, Dr. Smith removed the exposed portion of the mesh, but Shirey continued to experience pain in her thigh.  Dr. Smith told Shirey that the pain was caused by her ObTape, and he recommended removing as much of the remaining mesh as possible.  Dr. Smith performed a second excision procedure on July 19, 2006.

Shirey is a Georgia resident whose ObTape-related treatment took place in Georgia.   On October 19, 2012, Shirey served Mentor with a copy of her Complaint captioned in Hennepin County District Court of the State of Minnesota.   Shirey brought claims for strict liability and negligence, and her husband Brian brought a loss of consortium claim.

## V.   Plaintiff Michelle Weikel (ECF No. 40 in 4:13-cv-10)

Dr. Deborah Poplawsky implanted Michelle Weikel with ObTape on April 2, 2004 to treat Weikel's stress urinary incontinence. In April 2005, Weikel returned to Dr. Poplawsky complaining of vaginal discharge, burning, and itching.   Weikel knew that something was wrong because she had pain and noticed a foul odor.   Dr. Poplawsky examined Weikel and found an erosion of Weikel's ObTape.   Dr. Poplawsky told Weikel that a portion of her ObTape had eroded and would need to be removed.   Dr. Poplawsky removed the exposed piece of ObTape on May 3, 2005. Although Dr. Poplawsky told Weikel that she did not think that the ObTape caused Weikel's external itching, Weikel believes that ObTape caused her itching and other symptoms, such as pain and discharge.   And Weikel knew that she had to have a second surgical procedure because of the erosion.   Since the revision surgery in 2005, Weikel has wanted to have the remainder of her ObTape removed because of the problems she believes it causes.

Weikel is a Pennsylvania resident whose ObTape-related treatment took place in Pennsylvania. On December 12, 2012, Weikel served Mentor with a copy of her Complaint captioned in Hennepin County District Court of the State of Minnesota. Weikel brought claims for strict liability and negligence.

## VI. Plaintiff Betty Lou Shaffer (ECF No. 41 in 4:13-cv-48)

Dr. Subodh Patel implanted Betty Lou Shaffer with ObTape on November 17, 2003. In late 2003 or early 2004, Shaffer returned to Dr. Patel complaining of pain and a sandpaper-like sensation inside her vagina. Dr. Patel diagnosed Shaffer with an erosion of the ObTape and told Shaffer that he would have to remove the ObTape. After Dr. Patel performed the revision surgery, the sandpaper pain feeling went away.

Shaffer is a Pennsylvania resident whose ObTape-related treatment took place in Pennsylvania. On January 31, 3013, Shaffer served Mentor with a copy of her Complaint captioned in Hennepin County District Court of the State of Minnesota. Shaffer brought claims for strict liability and negligence.

### DISCUSSION

Each Plaintiff filed her action in Minnesota state court, and Mentor removed each Plaintiff's action to the United States District Court for the District of Minnesota. The cases were later transferred to this Court as part of a multidistrict litigation proceeding regarding ObTape. The parties agree for

7

purposes of summary judgment that Minnesota law applies to Plaintiffs' claims. *See In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, No. 4:08-md-2004, 2013 WL 286276, at *7 (concluding that Minnesota law applied to claims of non-Minnesota ObTape plaintiffs who brought their actions in Minnesota).

Mentor contends that Plaintiffs' claims are time-barred under Minnesota law. The statute of limitations for a strict liability claim is four years. Minn. Stat. § 541.05 subd. 2 ("[A]ny action based on the strict liability of the defendant and arising from the manufacture, sale, use or consumption of a product shall be commenced within four years."). The statute of limitations for a negligence claim is six years. Minn. Stat. § 541.05 subd. 1(5) (establishing six-year limitation period for personal injury claims not arising in contract or strict liability). Under Minnesota law, "a claim involving personal injuries allegedly caused by a defective product accrues when two elements are present: '(1) a cognizable physical manifestation of the disease or injury, and (2) evidence of a causal connection between the injury or disease and the defendant's product, act, or omission.'" *Klempka v. G.D. Searle & Co.*, 963 F.2d 168, 170 (8th Cir. 1992) (quoting *Hildebrandt v. Allied Corp.*, 839 F.2d 396, 398 (8th Cir. 1987)) (applying Minnesota law).

"A plaintiff who is aware of both her injury and the likely cause of her injury is not permitted to circumvent the statute of limitations by waiting for a more serious injury to develop from the same cause." *Id.* For example, in *Klempka*, the plaintiff suffered injuries and was diagnosed with chronic pelvic inflammatory disease, which her doctor said was caused by the plaintiff's intrauterine device. *Id.* at 169. Several years later, the plaintiff was told that she was infertile and that the intrauterine device caused her infertility. *Id.* Applying Minnesota law, the Eighth Circuit concluded that the plaintiff's cause of action accrued when she first learned that she had an injury (chronic pelvic inflammatory disease) that was caused by the intrauterine device. *Id.* at 170.

Here, each Plaintiff contends that she did not learn of a connection between ObTape and her injuries until she saw a television commercial regarding mesh complications during 2011 or 2012. But each Plaintiff knew that she suffered some injuries caused by ObTape well before then.

<u>Deborah Rogers</u>. Rogers knew in July 2006 that she had a foreign body hanging from her vaginal area and that she had to have it surgically removed. Rogers's doctors discussed their operative findings with her or a family member. Rogers acknowledges that her medical records reflect that her ObTape was removed in July 2006, and she also acknowledges that her

doctors probably told her the reason for the excision surgery at that time. Therefore, Rogers knew in July 2006 (or could have known, through the exercise of reasonable diligence) of a connection between ObTape and at least some of her injuries. She did not file her complaint until more than six years later, in October 2012.

Verna Mosier. Mosier suffered an abscess in February 2005, and her doctor told her at the time that she suspected a connection between the abscess and Mosier's ObTape. Shortly thereafter, another doctor diagnosed Mosier with a vaginal erosion of the ObTape and told Mosier that there was a high likelihood that the ObTape was related to her abscess. Therefore, Mosier knew by March 2005 that there was a likely connection between ObTape and some of her injuries. She did not file her complaint until more than seven years later, in September 2012.

Victoria Kearse. Kearse began to experience vaginal discharge shortly after her implant surgery, and her doctor diagnosed an erosion of ObTape. Several months later, in September 2005, Kearse's doctor diagnosed another erosion and performed another excision procedure. At the time, Kearse knew that the doctor had to remove portions of her ObTape, and she believed that her body was rejecting the mesh. Therefore, Kearse knew by September 2005 that there was a connection

between ObTape and some of her injuries.  She did not file her complaint until more than seven years later, in October 2012.

Samantha Shirey.  In 2006, Shirey began experiencing adverse symptoms, including vaginal discharge, thigh pain, and the feeling that she had a foreign object in her vagina.  In June 2006, Shirey was told that the object in her vagina was an exposed piece of mesh.  Shirey's doctor told her that he needed to remove the ObTape, that the ObTape was causing her discharge and thigh pain, and that he thought removing the exposed portion of the mesh would alleviate these symptoms.  After the doctor removed a portion of the mesh, Shirey continued to experience pain.  Shirey's doctor told her that the pain was caused by her ObTape.  He recommended removing as much of the remaining mesh as possible and performed a second excision surgery in July 2006.  Therefore, Shirey knew by July 2006 that there was a connection between ObTape and some of her injuries.  She did not file her complaint until more than six years later, in October 2012.

Michelle Weikel.  In April 2005, Weikel went to her doctor complaining of vaginal discharge, a foul odor, burning, and itching.  Weikel's doctor told her that a portion of her ObTape had eroded and would need to be removed.  Weikel's doctor removed the exposed piece of ObTape on May 3, 2005.  Although the doctor told Weikel that she did not think that the ObTape

caused Weikel's external itching, Weikel believes that ObTape caused her itching and other symptoms, such as pain and discharge.   And Weikel knew that she had to have a surgical procedure to remove the exposed ObTape.   Since the revision surgery in 2005, Weikel has wanted to have the remainder of her ObTape removed because of the problems she believes it causes. Therefore, by May 2005, Weikel strongly suspected a connection between ObTape and some of her injuries.   She did not file her complaint until more than seven years later, in December 2012.

Betty Lou Shaffer.   In late 2003 or early 2004, Shaffer went to her doctor complaining of pain and a sandpaper-like sensation inside her vagina.   Shaffer's doctor diagnosed her with an erosion of her ObTape and told Shaffer that he would have to remove the ObTape.   After Shaffer's doctor performed the revision surgery, the sandpaper pain feeling went away. Therefore, by January 2004, Shaffer knew of a connection between ObTape and some of her injuries.   She did not file her complaint until approximately nine years later, in January 2013.

Plaintiffs contend that it is not enough that they made a connection between ObTape and some of their injuries.   Rather, they appear to argue that they must have been on notice that a *defect* in ObTape caused their injuries.   Plaintiffs did not point to any Minnesota authority holding that a plaintiff must be on actual notice that her specific injuries were caused by a

12

product *defect.*   Rather, the precedent establishes that a claim accrues when the plaintiff becomes aware of an injury and a causal connection between the injury and the defendant's product.  *Klempka*, 963 F.2d at 170.

Plaintiffs nonetheless contend that two Eighth Circuit cases and one Minnesota District Court case support denial of summary judgment.  The Court disagrees.  First, they point to *Hildebrandt v. Allied Corp.*, 839 F.2d 396 (8th Cir. 1987), where the plaintiffs alleged that they suffered lung damage due to their exposure to a toxic chemical at their workplace.  But there, unlike here, the plaintiffs' doctors initially told the plaintiffs that there was no correlation between their symptoms and the chemical.  *Id.* at 399.  The Eighth Circuit thus concluded that the plaintiffs' claims did not accrue until the cause of the plaintiffs' injuries was rationally identified.  Second, Plaintiffs point to *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917 (8th Cir. 2004).  In *Tuttle*, the district court found that the decedent's smokeless tobacco product liability action accrued when the decedent discovered a lump in his cheek.  The Eighth Circuit reversed because the decedent's doctor initially told the decedent that the lump was caused by an oral infection and was treatable with antibiotics—not that it was oral cancer caused by the tobacco.  *Id.* at 922.  Third, Plaintiffs point to *Huggins v. Stryker Corp.*, 932 F. Supp. 2d 972 (D. Minn. 2013).

In *Huggins*, the plaintiff asserted that the defendant's pain pump caused a condition that resulted in degeneration of his cartilage.   The plaintiff's doctor discovered the loss of cartilage in 2002, but he did not connect the condition to the pain pump or tell the plaintiff that there was such a connection.   The district court noted that the "first article recognizing a potential causal link between pain pumps" and the plaintiff's condition was not published until 2007.  *Id.*

*Hildebrandt, Tuttle,* and *Huggins* are all distinguishable from Plaintiffs' cases.   In *Hildebrandt, Tuttle,* and *Huggins*, the plaintiffs suffered injuries that could have been caused by the defendant's product OR could have been caused by something else, and the courts concluded that the cause of action did not accrue until the plaintiffs had some objective information suggesting a causal link between the product and the injury.   In contrast, here, each Plaintiff suffered injuries that were connected to an erosion of the ObTape, and each Plaintiff knew of, strongly suspected, or had enough information to know of a connection between ObTape and at least some of her injuries by the time of her excision procedure.

Plaintiffs argue that even if Minnesota's discovery rule does not save their strict liability claims, the statute of limitations should be tolled by fraudulent concealment. "Fraudulent concealment, if it occurs, will toll the running of

14

the statute of limitations until discovery or reasonable opportunity for discovery of the cause of action by the exercise of due diligence." *Holstad v. Sw. Porcelain, Inc.*, 421 N.W.2d 371, 374 (Minn. Ct. App. 1988); *accord Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 918 (Minn. 1990). "The party claiming fraudulent concealment has the burden of showing that the concealment could not have been discovered sooner by reasonable diligence on his part and was not the result of his own negligence." *Wild v. Rarig*, 234 N.W.2d 775, 795 (Minn. 1975).

As discussed above, each Plaintiff knew of, strongly suspected, or had enough information to know of a connection between ObTape and at least some of her injuries by the time of her excision procedure. A reasonable person in that situation would take some action to follow up on the cause of her injuries and try to find out whether the injuries were caused by a problem with ObTape, a problem with the implant surgery, or some other problem. But Plaintiffs pointed to no evidence that they took any action to investigate their potential claims even though they knew (or had enough information to know) there was a connection between their injuries and the ObTape. Under these circumstances, the Court concludes that fraudulent concealment does not toll the statute of limitations.

None of the Plaintiffs filed their complaints within six years after their claims accrued. Their strict liability and

negligence claims are therefore time-barred.  The loss of consortium claims of Abraham Mosier and Brian Shirey fail because their wives' claims fail.  *Kohler v. Fletcher*, 442 N.W.2d 169, 173 (Minn. Ct. App. 1989).  ("As a husband's claim for loss of consortium is derivative only, if his wife's underlying tort claim fails, his claim for loss of consortium also fails.").

CONCLUSION

For the reasons set forth above, Mentor's summary judgment motions (ECF No. 42 in 4:12-cv-307; ECF No. 45 in 4:12-cv-308; ECF No. 44 in 4:12-cv-319; ECF No. 49 in 4:12-cv-323; ECF No. 40 in 4:13-cv-10; ECF No. 41 in 4:13-cv-48) are granted.


IT IS SO ORDERED, this 9th day of December, 2015.

s/Clay D. Land
_____
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA
